IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KEYSTONE DEDICATED LOGISTICS,<br>    Plaintiff, | )<br>)  Civil Action No. 09-0569<br>) |
| vs. | )  Magistrate Judge Lisa P. Lenihan<br>) |
| THE FLEXAUST COMPANY, INC., d/b/a<br>FLEXAUST INDUSTRIAL,<br>    Defendant. | )<br>)<br>) |

## OPINION ON MOTION FOR RECONSIDERATION

### I. Summation

The Motion for Reconsideration of Summary Judgment filed by Defendant Flexaust Company, Inc. ("Flexaust") will be denied.

### II. Factual and Procedural History

As fully set forth in this Court's Opinion on Motion for Summary Judgment, Plaintiff ("KDL") alleges that Flexaust breached the parties' Transportation Services Agreement (hereafter the "TSA") and obtained improper benefit from KDL's product transportation-related efforts. The parties' written agreement provides that "KDL [was] authorized to negotiate rates on behalf of Flexaust and *Flexaust agree[d] to utilize those freight companies when said freight companies provide[d] a cost savings over current programs and [met] expected service levels*

*defined by Flexaust*." Schedule A at ¶ 2 (emphasis added). Agreed-upon carriers were referred to as "compliant carriers". Id. KDL was to "process Flexaust freight bills weekly"; invoice Flexaust and distribute funds to KDL/compliant carriers; and "track all non-compliance carriers and provide cost of non-compliance usage." Id. at ¶ 3. Anticipated freight savings (the "transportation cost savings") were to be divided between the parties. Flexaust was to "compensate KDL by [a specified] formula . . . for all recognized freight savings" and KDL was to "calculate transportation savings defined as 'Benchmark Rate Calculation' less KDL transportation arrangements *or other transportation arrangements* that are less than 'Benchmark Rate Calculations.'" Schedule A at ¶ 4 (emphasis added). But "*IF THERE [WERE} NO SAVINGS THEN THERE [WERE] NO FEES DUE TO KDL*" other than weekly processing fees and expense reimbursements. Id. (emphasis in original).

The TSA further provided for an initial term of 48 months "from the date that the parties agree on carrier pricing", but permits a "one year trial period - early termination" pursuant to which Flexaust could elect to terminate during the 12th to 15th months of the contract. TSA at ¶ 4. Early termination required that Flexaust "deliver a written cancellation notice" and provide KDL an "opportunity to meet Flexaust in person." Id. And cancellation under this provision would take effect ninety (90) days from the date of notice. Id. A party might also terminate "for cause", provided that it permitted a thirty (30) day window for remedy of any default. Id.

Finally, the "Exclusivity" paragraph of the TSA provided that for the term of the TSA and, if early termination were elected, for one year thereafter, Flexaust "agrees not to directly solicit the services of any transportation companies that KDL has introduced to service Flexaust." Id. at ¶ 5.

2

The parties began performance under the contract in January, 2008.  <u>See</u> Opinion on Motion for Summary Judgment at 4.  This action was transferred to this Court in May, 2009.

In April, 2010, this Court granted Defendant's October, 2009 Motion for Summary Judgment on claims of unjust enrichment and *quantum meruit*, and denied said Motion as to Plaintiff's claims for breach of contract.  As to the latter, the Court concluded that material fact questions regarding (a) Flexaust's use of other transportation services and obligation to pay KDL for savings obtained on shipments made through "non-compliance" carriers; (b) the effective date, if any, of Flexaust's termination of the TSA; and c) Flexuast's relationship with UPS, precluded summary judgment.  On August 20, 2010, Defendant moved for Reconsideration of that Opinion.  By a separate Motion of the same date, Defendant also moved for Leave to Amend its Answer to include an additional affirmative defense of waiver.  The Court has granted Defendant's request to amend.[1]

### III. <u>Summary Judgment Standard</u>

Summary judgment is to be granted only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact . . . the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A fact is "material" if proof of its existence or non-existence might affect the outcome of the suit under applicable law.  <u>See</u> <u>Anderson v. Liberty Lobby, Inc.</u>,

---

[1] The Courts notes that its preliminary review of cases in which a party has been found to have waived its rights to the enforcement of express provisions contained in a contract requiring that modifications be made in writing, suggests that those cases generally entail the party's express declarations to the contrary, undisputed acts to the contrary, conduct clearly inconsistent with an intent to stand on the contractual provisions, or other circumstances in which the party's course of conduct is not open to other reasonable explanation/interpretation.

3

477 U.S. 242, 248 (1986). And a dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Id.

All doubts as to the existence of a genuine issue of material fact are resolved against the moving party, and the entire record is examined in the light most favorable to the nonmoving party. Continental Ins. Co. v. Bodie, 682 F.2d 436, 438 (3d Cir. 1982). However, the nonmoving party may be subject to summary judgment under Rule 56 if, after adequate time for discovery, it "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

## IV. Analysis

### A. Entitlement to Reconsideration

As Plaintiff duly notes in its brief Response to Defendant's Motion for Reconsideration, the evidence submitted with Defendant's Motion appears to be information that was available had Defendant elected to pursue inquiry/discovery and/or introduce it of record prior to either its October, 2009 Motion for Summary Judgment or this Court's April, 2010 ruling. Compare, e.g., Max's Seafood Café v. Quinteros, 176 F.3d 669, 677 (3d Cir. 1999) (including "the availability of new evidence *that was not available when the Court granted the motion for summary judgment*" as grounds for reconsideration) (emphasis added) (cited in Defendant's Memorandum in Support at 9, n. 10).

The Court has nonetheless considered the additional evidence and arguments which Defendant has now rather belatedly elected to present in support of its October, 2009 Motion for Summary Judgment. While much of said evidence goes to the material fact questions regarding breach of contract which were identified in this Court's Opinion, *none* of said evidence resolves them.

**B. Breach of Contract**

1. <u>Use of Non-Compliant Carriers and Share of Cost-Savings</u>

As discussed in the Opinion on Motion for Summary Judgment, the TSA expressly *requires* Flexaust to use KDL-referred carriers *when* those carriers offered shipment at a cost savings from the Benchmark Rate and with appropriate service/performance levels. See Schedule A at ¶ 2. The Court, on consideration of the evidence as discussed in the Opinion, concluded that, absent a valid termination of the TSA, if Flexaust rejected *qualifying* carriers, it was in breach of its contract; and as to this matter there are clearly questions of material fact. It also observed that the TSA reflects the parties' anticipation of non-compliance carriers/usage and "other transportation arrangements" and the contractual fee provisions indicate that a percentage of any "other transportation arrangements" cost savings would be passed on to KDL. Id. at ¶ 4. Thus it concluded that, as to this issue as well, questions of material fact preclude summary judgment.

Defendant newly asserts that the parties did not intend to either restrict Flexaust's right to use other carriers or impose any cost-savings sharing obligations on Flexaust as to non-KDL carriers, KDL made express representations to this effect, and/or that KDL waived its right to enforcement of the related contractual provisions by knowingly permitting Flexaust to use non-compliant carriers with no cost-savings charge. And it provides newly-introduced "course of

5

performance" and other evidence in support of these assertions.[2] Defendant's additional evidence is, however, also reasonably consistent with Plaintiff's assertions that the written contractual provisions meant what they said, and that KDL neither represented or contracted to allow Flexaust unrestricted use of non-KDL carriers without cost-sharing nor waived its rights to enforcement of the contract by electing not to impose its carrier restrictions or cost-sharing provisions on Defendant's initially comparatively-limited use of non-compliance carriers.[3] Ergo,

---

[2] See generally Exhibits to Defendant's Reconsideration pleadings (including, *e.g.*, evidence that KDL processed numerous invoices/billings for Flexaust's use of non-compliance carriers without objection or imposition of cost-savings fees, and that KDL raised no direct response to Defendant's September 2008 e-mail characterization of its rights under the TSA). Cf. Defendant's Motion for Reconsideration at 3 ("In light of this evidence, it is clear that the parties did not intend for the TSA to expressly require Flexaust to exclusively use KDL obtained or "compliant" carriers, even if such carriers offered a cost savings . . . .").

[3] See generally id. (including (a) Defendant's notes of an August 20, 2007 pre-contract meeting indicating: "We do not have to use the least cost carrier if we do not like their service" - which is not inconsistent with the restrictions on use of carriers linked to cost and service standards contained in the TSA; (b) Defendant's notes of an August 21, 2007 meeting stating that KDL "repeatedly stated that our current preferred carriers would get every opportunity to maintain the business" (an opportunity that would not be necessary absent use restrictions); (c) evidence of Plaintiff's billing of cost-savings fees on some shipments, which Defendant attests it believed was in error; and (d) Plaintiff's internal memorandum of October, 2008, indicating that it would watch and consider the extent to which Flexaust's use of UPS affected KDL's business/profit on the account before objecting to a breach of contract). See also Plaintiff's Brief in Opposition at 2 (stating that notational evidence reflects "discussions about the possibility that Flexaust could be dissatisfied with carriers provided by KDL because of 'service' issues" and that "[w]hether or not KDL insisted upon being paid in every instance does not mean it was not entitled to payment").

The Court also observes that KDL's early Fall 2008 proposals, in attempted resolution of the parties' disagreement regarding Defendant's use of UPS - that (a) KDL reduce its cost-savings profit share and (b) Flexaust sign a revised TSA which would require it to use Plaintiff's carriers for all LTL shipments (*i.e.*, which would eliminate the cost and service standards limitations on required usage of compliant carriers contained in the original TSA) - do not preclude an understanding that the original TSA contained restrictions on Defendant's use of other carriers. Cf. Defendant's Memorandum in Support at 5 (noting that Flexaust increased its use of non-compliant carriers in July-August, 2008 and that KDL then proposed a percentage fee reduction and revised TSA).

material factual issues remain.

    2. Termination

As discussed in the Opinion on Motion for Summary Judgment, the TSA was terminable during the early opt-out window (between 12 and 15 months) or for cause, subject to further contractual conditions. The record suggests that the contract was effective at the beginning of January, and the December, 2008 Termination Letter indicating that it served "as written cancellation notice pursuant to the early termination right granted in Section 4 of the [TSA]" appears, therefore, to be premature under that provision. The Opinion thus concluded that questions of material fact remained as to the effectiveness and timing of any termination of the TSA, noting that "[a]n effective termination of the TSA would, of course, affect the period during which Plaintiff might be entitled to recovery for Defendant's breach."

Defendant has now elected to submit additional evidence suggesting that a valid termination was effected, if not by correspondence of December 2008 and Plaintiff's subsequent conduct, then by Defendant's written correspondence of January 26, 2009 reiterating its desire to terminate the contract and offering to meet in person in accordance with the terms[4] or

---

[4] See generally Exhibits to Defendant's Reconsideration pleadings (including evidence that KDL communicated a TSA termination date of March 17, 2009 to carriers; and that Flexaust reiterated its desire to terminate under the contract's early opt-out provisions by a timely letter of January 26, 2009, the effectiveness of which (as an "official cancellation letter") was acknowledged by Plaintiff as in, *e.g.*, its email of February 9, 2009). See also Plaintiff's letter of February 12, 2009 (proposing that both parties waive "in person" meeting and participate in telephone conference, which occurred).

7

February 27, 2009 reiterating its desire to terminate contract following telephone conference and Plaintiff's objection to December 16, 2008 correspondence as outside the opt-out window.[5] Defendant's evidence does not, however, resolve all material questions of fact on this issue. Moreover, a question of the scope of (or probable limitation on) damages does not in itself comprise a "claim", and its factual resolution would not entitle Defendant to summary judgment as to Plaintiff's cause of action for breach of contract.[6] See, *e.g.*, Buckley v. Hoffnagle, 2008 WL 4459047 (M.D. Fla. October 3, 2008) (finding judgment as a matter of law "inappropriate" on a matter that was not a cause of action).

      3.  Direct Solicitation

Finally, as also discussed in the Opinion on Motion for Summary Judgment, the TSA prohibits Flexaust from "directly solicit[ing] the services of any transportation companies that KDL has introduced to service Flexaust" during the contract term or, in the event of early termination, for one year thereafter. The Opinion concluded that liability for breach of this provision turns on the factual question of the relationship/contact history between Flexaust and UPS, which remains a matter of disagreement between the parties. None of the additional evidence now submitted alters that assessment.

---

    [5] Cf. Plaintiff's Brief in Opposition at 5 (disputing that Flexaust ever "compl[ied] with the technical early termination provisions" of the TSA).

    [6] Depending upon what evidence comes in at trial, the court would consider a jury charge limiting damages to a certain time frame based upon the January 2009 "second" termination letter.

**V. Conclusion**

An Order consistent with the Memorandum Opinion will be entered.

_____
LISA PUPO LENIHAN
United States Magistrate Judge


Dated: August 31, 2010